# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

In re:                                                    )
                                                          )
WINDMIL THERAPEUTICS, INC., a                             )
Delaware corporation,                                     )
                                                          )
                 Assignor,                                )
                                                          )   C.A. No. 2023-1294-PAF
To:                                                       )
                                                          )
WMT (AN ABC) LLC, a Delaware limited                      )
liability company,                                        )
                                                          )
                 Assignee.                                )

## MEMORANDUM OPINION

Date Submitted:  March 6, 2024
Date Decided:  March 13, 2024

Adam Hiller, HILLER LAW, LLC, Wilmington, Delaware; Patrick Costello, VECTIS LAW, Redwood City, California; *Attorneys for Assignee WMT (an ABC) LLC*.

**FIORAVANTI, Vice Chancellor**

This action involves a voluntary assignment for the benefit of creditors by assignor WindMIL Therapeutics, Inc. (the "Assignor").[1] The assignee, WMT (an ABC) LLC (the "Assignee") has filed motions to appoint appraisers pursuant to 10 *Del. C.* § 7382 and to fix a bond pursuant to 10 *Del. C.* § 7383.[2] For the reasons discussed below, the motions are denied, and the case is dismissed.

## I.  BACKGROUND

On December 27, 2023, the assignee filed the assignment petition in this case.[3] The Assignee is a single-purpose Delaware limited liability company formed by Ravix Group Inc. for purposes of this matter.[4] The petition averred that the Assignor entered into the assignment on March 13, 2023.[5] Although the petition indicated that the assignment agreement was attached as Exhibit A, the assignment agreement was not submitted with the petition. On January 3, 2024, the court entered an order governing the proceeding (the "Initial Order").[6]

---

[1] Citations to the docket in this action are in the form of "Dkt. [#]."

[2] *See* Dkts. 6 & 7.

[3] Dkt. 1.

[4] *Id.* ¶ 11.

[5] *Id.* ¶ 8.

[6] Dkt. 2.

On January 10, 2024, the assignee filed a letter requesting a 45-day extension to file a declaration detailing the matters identified in the court's Initial Order.[7] The court entered a minute order granting that request the next day.[8] On February 23, the Assignee filed the initial affidavit responding to the Initial Order.[9] The initial affidavit included the assignment agreement, which is dated March 13, 2023.[10] The exhibits to the initial affidavit also included two purported valuation opinions. One is an appraisal authored by Redwood Valuation Partners ("Redwood") and dated November 21, 2023, with a valuation date of October 31, 2023. It is conspicuously stamped on every page as a "DRAFT - FOR DISCUSSION PURPOSES ONLY" and is unsigned.[11] The draft Redwood appraisal estimates the fair market value of the assignor's intellectual property to be $409,000. The other appraisal is authored by Braun Co. ("Braun") and dated November 22, 2023, with a valuation date of October 31, 2023.[12] It offers a "speculative value" of the assignor's patents and intellectual property of $100.00.

---

[7] Dkt. 3.

[8] Dkt. 4.

[9] Dkt. 5.

[10] *Id.* Attachment C.

[11] *Id*. Attachment F.

[12] *Id*. Attachment G.

On March 6, 2024—four-and-a-half months after receiving the purported appraisals, and more than three months after the filing of the petition—the Assignee filed a motion seeking an order of this court appointing Redwood and Braun as appraisers (the "Appraiser Motion").[13] The Appraiser Motion acknowledges that it is seeking retroactive appointment of the proposed appraisers. The Appraiser Motion offers no explanation for the Assignee's decision to obtain appraisals from appraisers that had not been appointed by the court.

Also on March 6, the Assignee filed a motion to fix the bond (the "Bond Motion").[14] The Bond Motion states that the assets assigned to the Assignee consist of (1) amounts due for tax refunds, of which the Assignee has collected $151,000, and (2) intellectual property. The Assignee proposes that the court fix the bond at $152,000, which the Assignee derives by adding the amounts collected for tax refunds and a nominal value of $1,000 for the intellectual property. The Assignee asks the court to ignore Redwood's purported appraisal of the intellectual property in the amount of $409,000 because, after the initiation of this proceeding, the licensor of the intellectual property "indicated to the Assignee that it is not interested

---

[13] Dkt. 6.

[14] Dkt. 7.

in working with the Assignee to permit an assignment of its license rights in connection with a disposition by the Assignee."[15]

## II. ANALYSIS

The Delaware assignment for the benefit of creditors, or "ABC," statute consists of seven sections. The first requires in any voluntary assignment that "the assignee, within 30 days after the execution thereof, shall file in the office of the Register in Chancery . . . an inventory or schedule of the estate or effects so assigned." 10 *Del. C.* § 7381. Section 7382 next requires the court to appoint "2 disinterested and competent persons to appraise the estate assigned." In practice, this has typically involved the assignee filing a motion to appoint two appraisers, which the assignee has identified and has determined are competent and are not conflicted.

After the appraisers have provided their appraisals, the statute requires the court to fix a bond "in an amount . . . being not less than the total amount of inventory and appraisement of the estate so assigned." *Id*. § 7383. Section 7384 permits the court, upon application of any interested party, to "direct the bond . . . to be proceeded on if it deems it necessary and proper for the protection of such interested party."

---

[15] Dkt. 5 at 4; *see also* Dkt. 7 ¶ 2.

The assignment statute commands that "[t]he assignee shall render an account of the assignee's trusteeship every year from the date of the assignee's bond" and each year thereafter until the assignment is closed. *Id.* § 7385(a). The accounting is to be filed with the Register in Chancery (*id.*), and all persons in interest must receive notice and an opportunity to file exceptions to the accounting. *Id.* § 7385(b). Section 7386 allows the court to remove an assignee for cause and to appoint a replacement assignee. Finally, Section 7387 provides for the voiding of preferences and assignments under certain circumstances.

This case, like most other ABC cases, has proceeded *ex parte*. Historically, *ex parte* ABC matters often provided little transparency to creditors, limited and incomplete information about the initiation of the ABC, and, frequently, failed to comply with the statutory requirements. Indeed, as one Delaware lawyer noted, practitioners used to call ABC practice under Delaware's assignment statute "the Wild West of bankruptcy." Leslie A. Pappas, *Del. Chancery Cracks Down on Non-Bankruptcy Bankruptcies*, Law360 (May 19, 2022). The court has issued rulings designed to encourage counsel to address these shortcomings. *See Matter of Global Safety Labs, Inc.*, 2022 WL 1493324, at *1 (Del. Ch. May 12, 2022) (noting that "counsel have a heightened obligation to provide information to the court" in *ex parte* matters such as ABCs); *see e.g.*, *In re Kidbox.com, Inc.*, C.A. No. 2022-0379-PAF, at 4 (Del. Ch. May 16, 2022) (ORDER) (denying *ex parte* application for the

6

functional equivalent of an automatic stay under the federal bankruptcy code which is not provided for in Delaware's ABC statute); *In re Prenexus Health, Inc.*, 2023 WL 2159180, at *2 (Del. Ch. Feb. 22, 2023) (denying motions to waive the requirement to appoint appraisers and for an unsecured bond); *In re Aeolus Pharmaceuticals, Inc.*, C.A. No. 2018-0212-PAF, at 5–6 (Del. Ch. Oct. 20, 2023) (TRANSCRIPT) (denying motion to approve final accounting and then dismissing ABC proceeding for failure to comply with the statutory requirements of Delaware's ABC statute).

With an eye toward bringing more transparency to the ABC process, in 2023, the court began requiring more detailed information from assignees and establishing firm deadlines to the extent they are not otherwise contained in the ABC statute. *See*, *e.g.*, *In re Theonys, Inc.*, 2023 WL 3600773 (Del. Ch. May 22, 2023) (order governing assignment for the benefit of creditors); *In re Summit Naturals, Inc.*, C.A. No. 2024-0199-PAF (Del. Ch. Mar. 6, 2024) (ORDER) (updated form of order). The Initial Order, which the court issued in this matter on January 3, 2024, seven days after the filing of the original assignment petition, is a similar order.[16] These orders supplement, not supplant, the statutory requirements for ABCs.

---

[16] Dkt. 2.

"[W]hen a voluntary assignment is made, certain things must be done as . . . specified [in the statute]." *Elliott v. Montell*, 30 A. 854, 855 (Del. 1885). Regrettably, this is another instance of an assignee's failure to comply with the ABC statute and untimely disclosure of information. First, the Assignee failed to comply with Section 7381, which requires the filing of the affidavit of inventory within 30 days of the execution of the assignment. The assignment is dated March 13, 2023, meaning that the Assignee was required to file the affidavit of inventory on April 12, 2023. The Assignee did not file the affidavit of inventory until December 27, 2023, when it filed the petition. No explanation was given for this clear violation of the ABC statute.

Second, the Assignee purported to retain appraisers and procure appraisals absent prior order of the court in violation of the ABC statute.[17] Making matters worse, one of the appraisals was unsigned and labeled as merely a draft. The Assignee offered no explanation for this statutory violation.[18] Nor does the Assignee

---

[17] 10 *Del. C.* § 7382 ("[T]he *Court of Chancery shall appoint* 2 disinterested and competent persons to appraise the estate assigned, *who shall, after being duly sworn or affirmed* by some person having authority to administer oaths, to perform their duties with fidelity, *forthwith proceed to make an appraisement* of the estates and effects assigned . . . ." (emphasis added)).

[18] The Assignee's request that the court ignore Redwood's "valuation" hints that the estate's resources may have been wasted. Before engaging appraisers, the Assignee could have inquired as to whether the licensor of the company's intellectual property would

explain why it sought approval of a bond prior to appointment of the appraisers who are tasked with performing appraisals upon which the terms of the bond are to be established.[19]

The Delaware ABC statute is not complicated. It has few mandates, but they must be followed. *See In re Weaver Hldg. Co.*, 2011 WL 5910707, at *1 (Del. Ch. Nov. 28, 2011) (refusing request to waive the bond requirement under Section 7383(a) because the court had "no basis to waive the bond requirement explicitly provided by the Legislature"). The Assignee has failed to comply with the statutory mandates. Accordingly, the court must dismiss this action for failure to comply with the statutory requirements of the ABC statute. *See, e.g., Aeolus*, C.A. No. 2018-0212-PAF, at 5–6 (dismissing ABC proceeding for failure to comply with the statutory requirements of Delaware's ABC statute); *see also In re Vernon Hills Serv. Co.*, 2024 WL 889963, at *7 (Del. Ch. Feb. 29, 2024) (dismissing ABC proceeding involving a non-Delaware assignor for lack of subject matter jurisdiction under the Delaware ABC statute).

_____

consent to a transfer of the license as part of the ABC process. It is unclear from the Appraiser Motion whether the appraisers were paid from the assignment estate for their appraisals.

[19] 10 *Del. C.* § 7383 ("*The assignee shall, as soon as the inventory and appraisement required by § 7382 of this title have been filed, give bond* with sufficient surety, to be approved by the Court of Chancery *in an amount fixed by the Court*, being *not less than the total amount of inventory and appraisement* of the estate so assigned." (emphasis added)).

9

## III.  CONCLUSION

For the foregoing reasons, the motions for appointment of appraisers and to fix bond are denied, and the action is dismissed.[20]

---

[20] Given the Assignee's failure to comply with the statutory requirement that the affidavit of inventory be filed within 30 days of the assignment and the unidirectional nature of the passage of time, it is apparent that this violation cannot be remedied by refiling a new petition under the existing assignment agreement.